UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TEETER-TOTTER, LLC,<br><br>    Plaintiff,<br><br>        v.<br><br>PALM BAY INTERNATIONAL, INC., et al.,<br><br>    Defendants. | Case No. 17-CV-06609-LHK<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS**<br><br>Re: Dkt. No. 34 |

Plaintiff-Counterdefendant Teeter-Totter, LLC ("Teeter-Totter") filed a trademark infringement lawsuit against Defendant-Counterclaimant Palm Wine Holdings, LLC ("Palm Wine") and other defendants who are not parties to the instant motion. ECF No. 1. Palm Wine counterclaimed. ECF No. 31. Before the Court is Teeter-Totter's motion to dismiss Palm Wine's Second and Third Amended Counterclaims ("Counterclaims"). ECF No. 34. Having considered Palm Wine's Counterclaims and the parties' briefing, the Court GRANTS Teeter-Totter's motion to dismiss Palm Wine's Second and Third Counterclaims without prejudice. The Court also dismisses without prejudice Palm Wine's First Counterclaim for declaratory relief to the extent that it is premised on Teeter-Totter's alleged violations of the Lanham Act.

1
Case No. 17-CV-06609-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

## I. BACKGROUND

### A. Factual Background

Palm Wine is a Delaware limited liability company with a principal place of business in Port Washington, New York. ECF No. 31 ¶ 5. Palm Wine has been authorized to conduct business in California since January 23, 2014. *Id.* Teeter-Totter is a California limited liability company with a principal place of business in St. Helena, California. *Id.* ¶ 7.

Teeter-Totter is the owner of U.S. Federal Trademark Registration No. 4,557,117 for the Teeter-Totter word mark ("word mark"), U.S. Federal Trademark Application Serial No. 87/580,240 for the Teeter-Totter design mark ("U.S. design mark"), and California Trademark Registration No. 122,196 for the Teeter-Totter design mark ("California design mark"). *Id.* ¶ 9. On March 6, 2014, Palm Wine filed U.S. Trademark Application Serial No. 86/213,179 for the "Au Contraire" design mark. *Id.* ¶ 11.

Broadly, Palm Wine alleges that "Plaintiff will be unable to demonstrate the essential element of likelihood of confusion under the governing *Sleekcraft* factors as a matter of law." *Id.* ¶ 1. Palm Wine alleges that "there is a serious question whether [Teeter-Totter] even has priority of trademark rights" because Teeter-Totter's registrations and applications "were procured by false and inaccurate statements to the US PTO." *Id.* ¶ 2. Palm Wine alleges that because Teeter-Totter's marks are subject to cancellation, "Palm Wine in fact has prior and superior trademark rights" as against Teeter-Totter, and that Teeter-Totter's claims "should be dismissed for failure to establish the essential element of priority of rights." *Id.* ¶ 19.

Teeter-Totter filed U.S. Trademark Application Serial No. 85/901,543 for the Teeter-Totter word mark "on an intent-to-use basis in accordance with 15 U.S.C. § 1051(b)." *Id.* ¶¶ 12, 23. On March 20, 2014, Boris Guillome executed a document intended to assign that application and the Teeter-Totter word mark to "Benoit Touquette, the principal of . . . Teeter-Totter." *Id.* ¶¶ 12, 22. That document (the "Assignment Document") is attached to the amended counterclaims. *See id.* at 15–16. Palm Wine alleges that the Assignment Document "does not convey rights to Mr. Touquette of the entire business of Mr. Guillome related to the TEETER-TOTTER brand." *Id.* ¶

2

25. Touquette "filed a Statement of Use document with the US PTO on April 24, 2014." *Id.* ¶ 26. Palm Wine alleges that the Assignment Document "violated the Lanham Act's anti-assignment provision for intent-to-use trademark applications" because Guillome assigned the application to Touquette before filing a Statement of Use. *Id.* ¶ 27.

In all three of its trademark filings, Teeter-Totter "claim[ed] a date of first use in interstate commerce of October 25, 2013." *Id.* ¶ 9. Specifically, in the April 24, 2014 Statement of Use filed for the word mark, Touquette "swore under penalty of perjury that the date of first use of the TEETER-TOTTER word mark in interstate commerce was October 25, 2013." *Id.* ¶ 30. When Teeter-Totter filed the U.S. design mark application on August 23, 2017, Touquette swore "that the date of first use of the TEETER-TOTTER Design Mark in interstate commerce was October 25, 2013." *Id.* Likewise, when Teeter-Totter filed its application for the California design mark, Touquette "swore under penalty of perjury that the date of first use of the TEETER-TOTTER Design Mark in interstate commerce was October 25, 2013. *Id.* Teeter-Totter received a certificate of label approval ("COLA") from the Alcohol and Tobacco Tax and Trade Bureau to bottle and pack wine "effective November 7, 2013." *Id.* ¶ 9. Palm Wine alleges that Touquette's three statements about the first use of the Teeter-Totter marks "were untrue when made and were intended to defraud the US PTO and the State of California." *Id.* ¶ 31.

**B. Procedural History**

On November 16, 2017, Teeter-Totter filed suit against Palm Wine, Palm Bay International, Inc., J Vineyards & Winery LLC d/b/a Au Contraire, Wine Associates, and Does 1-14 (collectively, "Defendants"). ECF No. 1. Teeter-Totter's Complaint asserts twelve causes of action, including claims for federal and state trademark infringement, federal and state unfair competition, common law trademark infringement, federal copyright infringement, cancellation of Palm Wine's trademark registration, and inequitable conduct before the U.S. Patent and Trademark Office ("USPTO"). *Id.* at ¶¶ 46–129.

On March 12, 2018, Defendants filed an Answer. ECF No. 19. That same day, Palm

3

Case No. 17-CV-06609-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

Wine counterclaimed against Teeter-Totter. ECF No. 20. On April 5, 2018, Palm Wine filed the amended Counterclaims that are at issue in the instant motion. ECF No. 31. Palm Wine raises three causes of action against Teeter-Totter: (1) a declaration that it has "prior and superior trademark rights" as against Teeter-Totter; (2) cancellation of Teeter-Totter's U.S. design mark for violation of the Lanham Act's restrictions on assignment of intent-to-use applications, and (3) cancellation of the word mark, U.S. design mark, and California design mark for "fraud on the PTO and the State of California." *Id.* ¶ 17–35.

On April 25, 2018, Teeter-Totter filed a motion to dismiss Palm Bay's Second and Third Counterclaims. ECF No. 34 ("Mot."). Teeter-Totter also requests attorney's fees on the grounds that Palm Wine's Counterclaims are frivolous. *Id.* Palm Wine filed an opposition, ECF No. 41 ("Opp."), and Teeter-Totter filed a reply. ECF No. 43 ("Reply").

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The United States Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

4

Case No. 17-CV-06609-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

The Court, however, need not accept as true allegations contradicted by judicially noticeable facts, *see Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and it "may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into a motion for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor must the Court "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (internal quotation marks omitted). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). Thus, the Court "may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

### B. Leave to Amend

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id*. at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nonetheless, a court may in its discretion "deny leave to amend due to 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III. DISCUSSION

In its motion to dismiss, Teeter-Totter contends that Palm Wine's Second and Third Counterclaims should be dismissed as a matter of law because (1) the transfer executed via the Assignment Document was not an improper assignment under the Lanham Act, Mot. at 5–8; and (2) intentional misstatements about the first use date of the Teeter-Totter design and word marks cannot constitute fraud under the Lanham Act. *Id.* at 8–10. The Court concludes that the Second and Third Counterclaims should be dismissed without prejudice. The Court also dismisses without prejudice Palm Wine's First Counterclaim for declaratory relief to the extent that it is premised on Teeter-Totter's alleged violations of the Lanham Act.

### A. Second Counterclaim

In its Second Counterclaim, Palm Wine alleges that Teeter-Totter violated the Lanham Act, 15 U.S.C. § 1060(a)(1), by assigning the Teeter-Totter word mark application to Touquette before Teeter-Totter had filed a Statement of Use with the USPTO. ECF No. 31 ¶ 21–28. Palm Wine seeks cancellation of the U.S. word mark. *Id.* ¶ 28. Teeter-Totter moves to dismiss the Second Counterclaim on the basis that the Assignment Document did not constitute an invalid assignment. Mot. at 5–8.

The Lanham Act provides that "[t]he owner of a trademark used in commerce may request registration" of the mark. 15 U.S.C. § 1051(a). In addition, a person "with a bona fide intention . . . to use a trademark may request registration of [the] trademark" before the person has used the mark in commerce. *Id.* § 1051(b)(1). If a person registers a mark on an intent-to-use basis under § 1051(b), that person must within six months file "a verified statement that the mark is in use in commerce and specifying the date of the applicant's first use of the mark in commerce." *Id.* § 1051(d)(1).

Generally, "[a] registered mark . . . shall be assignable with the good will of the business in which the mark is used." 15 U.S.C. § 1060(a)(1); *see Russell Rd. Food & Bev., LLC v. Spencer*, 829 F.3d 1152, 1156 (9th Cir. 2016) ("It is beyond dispute that a trademark owner may assign his trademark."). However, the Lanham Act prohibits the assignment of an intent-to-use trademark

6

Case No. 17-CV-06609-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

registration "prior to . . . the filing of the verified statement of use under section 1051(d) of this title." *Id.* § 1060(a)(1). Exempted from that prohibition on the assignment of an intent-to-use registration is "an assignment to a successor to the business of the applicant, or portion thereof, to which the mark pertains, if that business is ongoing and existing." *Id.*; *see E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1289 (9th Cir. 1992) ("The purpose behind requiring that goodwill accompany the assigned mark is to maintain the continuity of the product or service symbolized by the mark and thereby avoid deceiving or confusing consumers.").

Palm Wine alleges that Teeter-Totter's assignment of the word mark to Touquette violated § 1060(a)(1) because the assignment "d[id] not convey rights to Mr. Touquette of the entire business of Mr. Guillome related to the TEETER-TOTTER brand." ECF No. 31 ¶ 25. Teeter-Totter contends that (1) the Assignment Document did not implicate § 1060(a)(1) because the transfer was between joint applicants; and (2) even if the transfer was an "assignment" for purposes of § 1060(a)(1), the Assignment Document demonstrates that Teeter-Totter conveyed the entire business along with the U.S. design mark. Mot. at 7–8. The Court finds both of Teeter-Totter's arguments persuasive.

As an initial matter, Teeter-Totter urges the Court to consider the text of the Assignment Document itself, which Palm Wine attached to the Counterclaims as "Tab A." Mot. at 5–6; *see* ECF No. 31 at 15–16. As stated above, a document attached to a pleading is a part of the pleading, and the Court "may assume that its contents are true." *Ritchie*, 342 F.3d at 908. Thus, the Court considers the Assignment Document as part of the pleading and assumes its truth.

The text of the Assignment Document contradicts Palm Wine's allegation that the Assignment Document "does not convey rights to Mr. Touquette of the entire business of Mr. Guillome related to the TEETER-TOTTER brand." *See* ECF No. 31 ¶ 25). The Assignment Document states that Touquette and Guillome transfer to Touquette "all right, title, and interest throughout the world in and to the name and trademark TEETER-TOTTER," as well as "any and all goodwill of the business connected with the use of, and symbolized by, the same, and the

7
Case No. 17-CV-06609-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

business in connection with which the trademark is intended to be used." ECF No. 31 at 16.

Teeter-Totter contends that "[a]n assignment between joint applicants"—in this case, Touquette and Guillome—"cannot violate the Lanham Act's prohibition on assigning intent-to-use applications." Mot. at 7. For support, Teeter-Totter cites to *Amazon Technologies, Inc. v. Wax*, 95 U.S.P.Q.2d 1865, 2010 WL 3597254 (T.T.A.B. 2010). In *Amazon Technologies*, the Trademark Trial and Appeal Board ("TTAB") interpreted § 1060(a)(1) as not prohibiting transfers between joint applicants on the basis that an assignment must be "to another." *Id.* at *8. *Amazon Technologies* concerned an almost identical transaction to that executed via the Assignment Document in the instant case; one joint applicant transferred the mark application to the sole possession of the other joint applicant. *Id.* The TTAB concluded that such a transfer "is more in the nature of a 'relinquishment' of ownership rights by one of the joint owners than a true 'assignment' to a different legal entity," and thus is not barred by §1060(a)(1). *Id.* at *9; *see also Central Garden & Pet Co. v. Doskoci Mfg. Co., Inc.*, 2013 WL 4635990, at *15 (T.T.A.B. 2013) (characterizing *Amazon Technologies* as involving a "relinquish[ment] of rights" that did not constitute a § 1060(a)(1) assignment).

Palm Wine contends that the TTAB's interpretation of §1060(a)(1) in *Amazon Technologies* was "flawed and improper," and that it contravenes this Court's decision in *Sebastian Brown Productions, LLC v. Muzooka, Inc.*, 2016 WL 949004 (N.D. Cal. Mar. 14, 2006). Opp. at 14. Under *Muzooka*, Palm Wine contends, the central question is "whether an 'ongoing and existing' business existed at the time of the assignment." *Id.* However, the Court only addresses that question if it concludes that an assignment was subject to § 1060(a)(1). *See Central Garden*, 2013 WL 4645990 at *17 (analyzing whether an assignment was to a successor only *after* concluding that trademark transfer was an assignment rather than a relinquishment). *Muzooka*, which applied § 1060(a)(1), and *Amazon Technologies*, which concluded that § 1060(a)(1) does not apply to transfers of mark registrations between joint applicants, are thus not at odds.

The Court is persuaded by the reasoning of *Amazon Technologies*. *See Grupo Gigante SA*

8

*De CV v. Dallo & Co., Inc.*, 391 F.3d 1088, 1095 (9th Cir. 2004) (stating that the Ninth Circuit respects the TTAB's "expertise" and that the TTAB's "decisions create expectations"). As the TTAB stated in *Amazon Technologies*, an "assignment" is a transfer of property to another. 2010 WL 3597254 at *8 (citing Black's Law Dictionary 62 (5th ed. abridged 1983)). In this case, the Assignment Document only *removed* Guillome as an owner of the intent-to-use registration. *See* ECF No. 31 at 16. Touquette owned the mark before and after the Assignment Document's execution; there was thus no transfer to another. Accordingly, the Court concludes that the transfer executed via the Assignment Document was not an assignment subject to § 1060(a)(1), and that Palm Wine's Second Counterclaim must be dismissed.

Moreover, even if the transfer executed via the Assignment Document was an assignment rather than a relinquishment of rights, Palm Wine has not sufficiently alleged that the assignment violated the Lanham Act. The Assignment Document states that Guillome and Touquette transferred to Touquette "any and all goodwill of the business connected with the use of, and symbolized by, the same, and the business in connection with which the trademark is intended to be used." ECF No. 31 at 16. Thus, the Assignment Document contradicts Palm Wine's allegation that Guillome and Touquette failed to transfer to Touquette the "entire business of Mr. Guillome related to the TEETER-TOTTER brand." ECF No. 31 ¶ 25. Absent such an allegation, Palm Wine's Second Counterclaim fails as a matter of law.

Perhaps as a result, Palm Wine recharacterizes the Second Counterclaim in its briefing. Palm Wine contends in its opposition that because "there was no ongoing and existing business for TEETER-TOTTER wine," the Assignment Document constituted an invalid assignment. Opp. at 11. Palm Wine argues that this case is analogous to *Muzooka*, which concerned a transfer between an individual and an LLC of which the individual was the sole owner. 2016 WL 949004 at *1. The dispute in *Muzooka* was whether the LLC "succeeded to an 'ongoing and existing' business" under the terms of §1060(a)(1). *Id.* at *9. This Court concluded that an ongoing and existing business "requires at least some use of the mark in commerce," and that because the plaintiff had

9

ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

1 not alleged such use, his claims should be dismissed. *Id.* at *11–12.

Palm Wine asserts that, as in *Muzooka*, because Teeter-Totter had "no ongoing and existing business" and "no goodwill associated with the mark" as of the date of execution of the Assignment Document, the Assignment Document was invalid. Opp. at 11. The essence of Palm Wine's argument is that "any goodwill that could have possibly existed in the TEETER-TOTTER mark as of March 20, 2014 belonged to distinct corporate legal entities" rather than to Guillome and Touquette. *Id.* at 12. However, as Teeter-Totter points out on reply, Palm Wine's Second Counterclaim includes no such allegation about Guillome and Touquette's ongoing and existing business. *See* Reply at 4. The factual allegations that Palm Wine includes in its briefing to support its argument that Teeter-Totter had no ongoing and existing business, *see* Opp. at 12–13, are not in the Counterclaim.[1] Instead, the basis for Palm Wine's second Counterclaim is that "the Assignment document does not convey rights to Mr. Touquette of the entire business of Mr. Guillome related to the TEETER-TOTTER brand." ECF No. 31 ¶ 25. The Assignment Document itself contradicts that allegation.

Accordingly, even if the transfer executed in the Assignment Document was an "assignment" under 15 U.S.C. § 1060(a)(1), Palm Wine has not sufficiently alleged that Teeter-Totter violated the Lanham Act's prohibition on assignment of intent-to-use applications. The Court therefore GRANTS Teeter-Totter's motion to dismiss Palm Wine's second Counterclaim.

**B. Third Counterclaim**

In its Third Counterclaim, Palm Wine alleges that Teeter-Totter obtained the word mark, U.S. design mark, and California design mark by fraud because Teeter-Totter stated a false date of first use in each of its trademark applications. ECF No. 31 ¶¶ 29-35. Palm Wine seeks cancellation of all three marks. *Id.* ¶ 35. Teeter-Totter moves to dismiss the Third Counterclaim

---

[1] For that reason, the Court denies as moot Palm Wine's request that the Court take judicial notice "that Fait Main Wines, LLC is a California limited liability company . . . formed by Robert M. Fanucci on July 16, 2012." Opp. at 4 n.2. There are no allegations about Fait Main Wines, LLC in the Counterclaim; Fait Main's ownership is thus irrelevant to the instant motion.

on the basis that the date of first use is immaterial to whether the USPTO or California grant a trademark application. Mot. at 8–10.

The Lanham Act permits a third party to petition to cancel a trademark whose "registration was obtained fraudulently." 15 U.S.C. § 1064(3). "Fraud in procuring a trademark occurs when an applicant knowingly makes false, material representations of fact in connection with his application." *In re Bose Corp.*, 580 F.3d 1240, 1243 (Fed. Cir. 2009) (internal quotation marks and citation omitted). Establishing a claim of trademark fraud requires "proof of intent to deceive." *Id.* (citing, *inter alia*, *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 996 (9th Cir. 2001)). A misrepresentation is material if the fact "would have affected the PTO's action on the application[]." *Orient Exp. Trading Co., Ltd. v. Federated Dep't Stores, Inc.*, 842 F.2d 650, 653 (2d Cir. 1988).

To obtain registration of a federal trademark, the applicant must allege that he or she is "the owner of the mark sought to be registered," that "the mark is in use in commerce," and that "no other person has the right to use such mark in commerce." 15 U.S.C. § 1051(a)(3). If a trademark owner instead applies for and receives registration on an intent-to-use basis under § 1051(b), the trademark owner must, within six months, supply "a verified statement that the mark is in use in commerce and specify[] the date of the applicant's first use of the mark in commerce." *Id.* at § 1051(d)(1). "Subject to examination and acceptance of the statement of use," the USPTO then registers the trademark. *Id.*

Teeter-Totter cites to two TTAB cases to support its argument that the date of first use is not material to the USPTO's decision to issue registration. Mot. at 9. In *Colt Industries Operating Corp. v. Olivetti Controllo Numerico S.P.A.*, 221 USPQ 73, 1983 WL 51834 (TTAB 1983), the TTAB considered a trademark applicant's claim that an opposing company had obtained its trademark by fraud. *Id.* at *1. The TTAB rejected the applicant's contention that a misrepresentation about the date of first use constituted fraud because when there are conflicting marks, an examining attorney "gives no consideration to alleged dates of first use." *Id.* at *3.

11

Instead, "[t]he only fraud that could be perpetrated on the Office with respect to false dates of first use in an application would be where no use was made as of the filing date of the application." *Id.* More recently, the TTAB addressed whether a statement of use supplementing an intent-to-use application under § 1051(b) was fraudulent. *See Std. Knitting Ltd. v. Toyota Jidosha Kabushiki Kaisha*, 77 U.S.P.Q.2d, 2006 WL 173643 (T.T.A.B. 2006). The TTAB cited *Colt Industries* for the proposition that "[t]he critical question is whether the marks were in use in connection with the identified goods as of the . . . filing date of the statement of use in the intent-to-use application." *Id.* at *10. "If the mark was in current use, then the first use, even if false is not fraud." *Id.*

The Ninth Circuit has similarly held that "[t]he claim of a date of first use is not a material allegation as long as the first use in fact preceded the application date." *Pony Exp. Courier Corp. of Am. v. Pony Exp. Delivery Serv.*, 872 F.2d 317, 319 (9th Cir. 1989); *see also Angel Flight of Georgia, Inc. v. Angel Flight Am., Inc.*, 522 F.3d 1200, 1210 (11th Cir. 2008) ("A misstatement of the date of first use in the application is not fatal to the securing of a valid registration as long as there has been valid use of the mark prior to the filing date.").

In its opposition, Palm Wine attempts to shift the focus from its allegations about Touquette's first-use statements. Instead, Palm Wine contends that its Lanham Act fraud claim rests on the allegation that Touquette made false statements about "the date of first use in commerce; ownership of the mark; and prior use in commerce at all as of April 24, 2014." Opp. at 16. However, Palm Wine's Third Counterclaim includes no factual allegations about the latter two sets of false statements. *See* ECF No. 31 ¶ 31 (asserting the untruth only of Teeter-Totter's statements about the date of first use).

It is clear from the authorities cited above that Palm Wine cannot state a Lanham Act fraud claim based on Touquette's false statements about Teeter-Totter's date of first use in commerce. Further, the two out-of-circuit district court cases that Palm Wine cites are not relevant. For example, in *City of New York v. Tavern on the Green, L.P.*, 427 B.R. 233 (S.D.N.Y. 2010), the district court concluded that the applicant had committed fraud because the applicant made false

12

Case No. 17-CV-06609-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

representations about *another owner's* first use of the mark the applicant sought to register. *Id.* at 243. Those misrepresentations about ownership and others' prior use "bore directly on [applicant's] right to register the mark," and were thus material. *Id. City of New York* did not hold that an applicant's false statements about its own first use of a trademark were material. The same is true of *Select Export Corp. v. Richeson*, 2011 WL 13135114 (S.D. Fla. May 5, 2011). In *Select Export*, the district court held that misstatements about the ownership of a mark—not about an applicant's own date of first use—constituted fraud on the USPTO. *Id.* at *7–8.

Accordingly, Palm Wine's allegations that Touquette made false statements about Teeter-Totter's's date of first use in commerce are not sufficient to state a claim for fraud under 15 U.S.C. § 1064(3). Moreover, "trademark claims under California law 'are substantially congruent' with federal claims and thus lend themselves to the same analysis." *Grupo Gigante*, 391 F.3d at 1100 (citing *Playboy Enters, Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1024 n.10 (9th Cir. 2004)). Thus, Palm Wine's allegations cannot state a claim for fraud to cancel Teeter-Totter's California design mark registration.

The Court therefore GRANTS Teeter-Totter's motion to dismiss (1) Palm Wine's Second Counterclaim for violation of the Lanham's Act intent-to-use assignment prohibition; and (2) Palm Wine's Third Counterclaim for fraud. The Court also dismisses Palm Wine's First Counterclaim for declaratory relief to the extent that it is premised on Teeter-Totter's alleged violations of the Lanham Act. The Court affords Palm Wine leave to amend because Palm Wine may be able to allege sufficient facts to support its Lanham Act claims. *See Lopez*, 203 F.3d at 1127 (holding that "a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts" (internal quotation marks omitted)).

### C. Attorney's Fees and Costs

Teeter-Totter also moves for attorney's fees and costs because, it contends, Palm Wine's Second and Third Counterclaims "were brought frivolously and/or with an improper motive to

13
Case No. 17-CV-06609-LHK
ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANT PALM WINE'S SECOND AND THIRD AMENDED COUNTERCLAIMS

needlessly expand the scope and increase the expense of this litigation." Mot. at 10. On reply, Teeter-Totter clarifies that it asks the court to exercise its inherent authority to award attorney's fees or its authority under 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorney's fees reasonably incurred because of such conduct." The Court concludes that although Palm Wine failed to state claims as a matter of law, the Second and Third Counterclaims were not so frivolous as to warrant an award of attorney's fees and costs. Thus, the Court DENIES Teeter-Totter's request for attorney's fees and costs.

## IV. CONCLUSION

For the foregoing reasons, the Court DISMISSES Palm Bay's Second and Third Counterclaims with leave to amend.

**IT IS SO ORDERED.**

Dated: September 25, 2018

_____
LUCY H. KOH
United States District Judge