CHRISTOPHER J. PASSARELLI, SBN 241174
JOY L. DURAND, SBN 245413
DICKENSON, PEATMAN & FOGARTY
1455 First Street, Ste. 301
Napa, California 94559
Telephone: (707) 252-7122

*Attorneys for Plaintiff, Teeter-Totter, LLC*

JOHN F. OLSEN, SBN 157465
FERDINAND IP, LLC
800 West El Camino Real, Ste. 180
Mountain View, CA 94040
Telephone: (858) 412-4515

EDMUND J. FERDINAND, III *(pro hac vice)*
FERDINAND IP, LLC
450 Seventh Avenue, Suite 1300
New York, New York 10123
Telephone: (212) 220-0523

*Attorneys for Defendants, Palm Bay International, Inc.;*
*Palm Wine Holdings, LLC; J Vineyards & Winery, LLC;*
*RB Wine Associates, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEETER-TOTTER, LLC,<br><br>Plaintiff,<br><br>vs.<br><br>PALM BAY INTERNATIONAL, INC.,<br>PALM WINE HOLDINGS, LLC,<br>J VINEYARDS & WINERY LLC, RB<br>WINE ASSOCIATES, LLC<br><br>Defendants.<br><br>PALM WINE HOLDINGS, LLC,<br><br>Counterclaim Plaintiff,<br><br>vs.<br><br>TEETER-TOTTER, LLC,<br><br>Counterclaim Defendant. | CASE NO. 5:17-cv-06609-LHK<br><br>**JOINT CASE MANAGEMENT<br>STATEMENT** |

Pursuant to the Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, Plaintiff Teeter-Totter, LLC ("Plaintiff") and Defendants Palm Bay International, Inc. ("Palm Bay"), Palm Wine Holdings, LLC ("Palm Wine Holdings"), J Vineyards & Winery d/b/a Au Contraire ("Au Contraire"), and RB Wine Associates, LLC ("RB Wine") (collectively, "Defendants") hereby submit this Joint Case Management Statement.

**Jurisdiction and Service**

The parties agree that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) and pendent jurisdiction over all related claims in accordance with 28 U.S.C. § 1338(b). There are no existing issues regarding service, personal jurisdiction or venue, and no parties remain to be served at this time.

**Facts**

**Plaintiff's Statement**. Plaintiff is a wine company founded by Napa Valley winemaker Benoit Touquette, a native of France, who has enjoyed much critical success, including numerous wines receiving 100-point scores from world-renowned critics. As a result, his wine has earned millions of dollars in consumer sales revenue. As early as October 25, 2013, Plaintiff sold both red and white wine under the distinctive trademark and name, TEETER-TOTTER.

The Teeter-Totter wine label incorporates a drawing of a mouse and elephant on opposite ends of a teeter-totter (the "Teeter-Totter Design Mark"). Plaintiff owns federal TM Reg. No. 4,557,117 for TEETER-TOTTER (Word) in Class 33, filed on April 11, 2013 as an ITU. Plaintiff also owns CA TM Reg. No. 122,196 and federal TM Reg. No. 5,428,362, both for the Teeter-Totter Design Mark. On August 31, 2017, the U.S. Copyright Office issued Plaintiff's U.S. Copyright Registration No. VA-0002096166 for the image embodied in the Teeter-Totter Design Mark as a creative work of authorship pursuant to 17 U.S.C. § 408.

In 2014, Defendants hired Popcorn Design, LLC dba Prospect Brands to develop and produce a new wine brand, bearing the French moniker "AU CONTRAIRE". Popcorn Design introduced Defendants to Lisa Hobro Design, a design firm specializing in the creation of wine labels. Lisa Hobro Design created a label bearing a bird and elephant on opposite ends of a

teeter-totter, in a configuration strikingly similar to the Teeter-Totter Design Mark. In early January, 2014, Marc Taub, principal of Defendant Palm Bay International, Inc. instructed Defendants' design team to *change the bird to a **mouse***, thus more closely approximating Plaintiff's Teeter-Totter Design Mark. Lisa Hobro Design made the change requested; the design approved by Defendants in late January of 2014 had the mouse's tail hanging off the end of the teeter-totter. The label design with a mouse and elephant on opposite ends of a teeter-totter was submitted to the label printer, Collotype Labels, in or about late February or early March of 2014. The same label design was also submitted to the U.S. Dept. of Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB"), in an application for a Certificate of Label Approval ("COLA"), which is required for alcoholic beverages.

On March 5, 2014, at approximately 4:14 pm PST, Lisa Hobro received an email from Collotype with Plaintiff's label proof bearing the Teeter-Totter Design Mark, and promptly notified Defendants and Popcorn Design, LLC. Jay Behmke, then a member and manager of Popcorn Design, LLC, and a California lawyer, conducted an investigation confirming: Plaintiff's pending "TEETER-TOTTER" standard character mark federal trademark application, and its approved TTB COLA bearing the Teeter-Totter Design Mark. Defendants were provided the results of Mr. Behmke's investigation. Without apparent further inquiry, Defendants filed with the USPTO their Application, Ser. No. 86/213,179 for the Au Contraire Design, at 11:59 am PST *the very next day,* March 6, 2014 – that is, less than 18 hours after Lisa Hobro Design had received Plaintiff's label proof.

Although Defendants' "final" label had already been submitted to Collotype for printing, Mr. Taub subsequently **drew a curlicue tail on top of the tail in Plaintiff's label proof** and instructed that this **additional design change** be made to Defendants' mouse.  This change also caused the Au Contraire label to more closely approximate Plaintiff's Teeter-Totter Design.

Due to the timing of these events, the final Au Contraire Design Mark used in commerce appears to be quite different from the mark drawing in Registration No. 4,757,065. The figure below is a side-by-side comparison (from left-to-right) of: (1) Plaintiff's Teeter Totter Design Mark (Reg. No. 5,428,362); (2) Defendants' prior Au Contraire Design (Reg. No. 4,757,065);

and (3) Defendants' "final" Au Contraire Design Mark (with modified mouse) as actually used in commerce.

  

**Fig. 1.** Teeter-Totter Design / Registered Au Contraire Design / Actual Au Contraire Design

Defendants subsequently began marketing wine under the AU CONTRAIRE brand. In its trademark application, Defendant Palm Wine Holdings, LLC claimed first use of the earlier Au Contraire design (which was never actually used in commerce) as of April 24, 2014. Palm Wine Holdings, LLC obtained federal Trademark Registration No. 4,757,065 for the unused design on June 16, 2015.

Plaintiff alleges that the Au Contraire Design Mark is confusingly similar to the Teeter-Totter Design Mark, that Defendants copied the Teeter-Totter Design Mark despite having knowledge of Plaintiff's trademarks and copyright, and intentionally misled the U.S. Patent and Trademark Office ("USPTO") in order to obtain Registration No. 4,757,065.

**Defendants' Statement.**   Plaintiff commenced this action in November, 2017, with no prior notice to Defendants, by filing a twelve-count Complaint for trademark infringement, copyright infringement and related claims under federal and state law. The crux of Plaintiff's Complaint, as amended, alleges that artwork on the label of Defendants' AU CONTRAIRE brand wine product infringes upon intellectual property rights in artwork on the label of Plaintiff's TEETER-TOTTER brand wine. To succeed on its federal Lanham Act claims, Plaintiff must establish that it has priority of enforceable trademark rights as against Defendants, likelihood of confusion under the governing *Sleekcraft* factors and damages. Defendants vigorously contest these elements and maintain that they have meritorious defenses to all of Plaintiff's claims as a matter of law.

In 2013, Defendant Palm Bay, a leading wine importer, decided to enter the California wine market through a newly formed entity, Heritance Vintners, LLC, and using the designation "Taub Family Vineyards" for marketing purposes. Heritance Vineyards formed key relationships necessary to establish the new California wine business, including retaining a renowned winemaker to oversee wine production and supply; retaining a prominent vineyard to produce wine; and retaining a prominent graphic designer to create wine labels.

The brand AU CONTRAIRE was conceived by Palm Bay for the first of the new California product lines as an homage to David Taub, Palm Bay's founder and former longtime president, who often used the phrase for insights that were contrary to conventional wisdom. When Palm Bay's President, Marc Taub, met with a graphic designer, Lisa Hobro, on September 23, 2013 to discuss label concepts and names, Mr. Taub indicated that "AU CONTRAIRE" would be the name of one of the new California wines.  On November 18, 2013, Defendant, Palm Wine, a related entity to Palm Bay, filed U.S. Trademark Application Serial No. 86/122,006 for the mark AU CONTRAIRE for use in connection with wines on an intent to use basis, which later matured into U.S. Federal Trademark Reg. No. 4,689,725.

Beginning in the fall of 2013, Palm Bay, d/b/a as Heritance, proceeded to take all necessary steps for the launch of AU CONTRAIRE brand wine, including arranging for production of the wine, the creation of the wine label and securing all necessary permits and regulatory approvals.  Lisa Hobro began working with Palm Bay to create a new label design for the AU CONTRAIRE product line. Ms. Hobro and her team worked for several months to create original artwork for the new AU CONTRAIRE label, completely unaware of the existence of artwork for the TEETER-TOTTER wine label. Palm Bay approved the label artwork on March 5, 2014, and that same day Ms. Hobro sent the label to a local printing company, Collotype Labels. Within hours, Ms. Hobro received an email back from David Buse of Collotype, attaching a copy of a work order that Collotype had done 6 months prior for Mr. Touquette's TEETER-TOTTER brand. Ms. Hobro immediately sent Mr. Buse's email to Palm Bay.

On March 6, 2014, Palm Wine's representatives conducted an investigation of the U.S wine market and could not locate any sales of wine products featuring the TEETER-TOTTER

label depicted in the TTB COLA application filed by Hartwell Vineyards on October 30 2013. Based upon this investigation, Palm Bay concluded that TEETER-TOTTER wines were not on sale in the U.S. market and it made the business decision, in good faith, to move forward with its AU CONTRAIRE brand using the label that Ms. Hobro had sent to Collotype, with additional slight modifications. That same day, on March 6, 2014, Palm Wine filed U.S. Trademark Application Serial No. 86/213,197 for the AU CONTRAIRE Logo Design mark, which later matured into U.S. Federal Trademark Reg. No. 4,757,065.

Palm Bay, acting though Heritance Vintners, commenced sales of AU CONTRAIRE wines in the United States on April 24, 2014.

The similarity of the marks is in dispute. First, while Plaintiff has asserted its federally-registered TEETER-TOTTER word mark to support its claims of trademark infringement and unfair competition, there can be no serious question of infringement between this word mark and Palm Wine's AU CONTRAIRE Logo Design mark. Defendants expect to file a summary judgment motion seeking dismissal as a matter of law for any claim related to infringement of Plaintiff's TEETER-TOTTER word mark.

With respect to a comparison of the TEETER-TOTTER Logo Design mark and Palm Wine's AU CONTRAIRE Logo Design mark, a detailed description of the differences in the two designs is set forth below, and these differences are relevant to both Plaintiff's trademark and copyright claims.  With respect to the issue of substantial similarity, a comparison of the two works makes clear that there is no substantial similarity of protectable expression, foreclosing a finding of copyright infringement under the Ninth Circuit's extrinsic/intrinsic test. Plaintiff's copyright in its design does not protect against others reproducing the *idea* of depicting a see-saw with an elephant elevated on one side and a mouse on the ground on the other side (an idea that has been expressed by others well before the creation of the parties' wine labels), but rather only the original expression of that idea as embodied in its drawing.  Comparing the *expressions* of this idea as depicted in the two drawings, there is no substantial similarity between their *expressive elements*.  Obvious differences in expression include (but not limited to):

- The mouse in Palm Bay's drawing is much smaller than the mouse in Teeter-Totter's drawing.
- The size of the mouse is larger in proportion to the size of the elephant in the Teeter-Totter drawing than the Palm Bay drawing, in which the elephant is significantly larger than the mouse.
- The mouse appears to be standing upright in the Teeter-Totter drawing, but not in the Palm drawing.
- The mouse in the Teeter-Totter drawing has a pointy nose and rounded ear; the mouse in the Palm drawing does not.
- The elephant in Palm's drawing is broader than the mouse in Teeter-Totter's drawing (approx. double the width).
- The curve of the elephant's trunk in each drawing is different (more "J"-shaped in the Palm Bay drawing; more "U"-shaped in the Teeter-Totter drawing).
- The mouse's tail in the Teeter-Totter drawing is "S"-shaped and pointing up and back; the mouse's tail in the Palm Bay drawing is "e"-shaped/curlicue, pointing in.
- The elephant in Palm's drawing shows four well-defined legs, a well-defined ear, and two tusks; the elephant in Teeter-Totter's drawing shows two "basic" legs, only a white line indicating an ear, and no tusk.
- The mouse and elephant (particularly the elephant) in Palm Bay's drawing are 3-dimensional life-like renderings with well-defined shading; the mouse and elephant in Teeter-Totter's drawing are 2-dimensional, cartoon-like pencil renderings
- The see-saw base in Teeter-Totter's drawing is a rock-like shape with a straight line underneath; the see-saw base in Palm Bay's drawing is a three-dimensional polygon shape (a box with a triangular top).
- The main see-saw board in Palm Bay's drawing is a three-dimensional rectangular shape; the main see-saw board in Teeter-Totter's drawing is simply a straight line.
- Shading appears beneath the see-saw in Palm Bay's drawing, but not Teeter-Totter's drawing.

The proximity of the parties' goods and sales and marketing channels are also in dispute. There are vast differences between the types of wine marketed under the parties' TEETER-TOTTER and AU CONTRAIRE brand names in terms of, *inter alia*, distribution channels, price, varietal and consumer appeal. AU CONTRAIRE brands are produced in Sonoma, California and are sold at popular price points. The www.wine-searcher.com site lists AU CONTRAIRE Pinot Noir at $ 9.99/bottle and Chardonnay for $15/bottle. In sharp contrast, TEETER-TOTTER wines, produced in Napa, are expensive wines sold to sophisticated wine purchasers mostly through Mr. Touquette's private mailing list. Mr. Touquette has an MSRP for his Napa Valley Cabernet Sauvignon at $ 65/bottle, although the product is available on www.wine-searcher.com for $55/bottle. Plaintiff's TEETER-TOTTER wines are available at a small number of wine shops in Napa Valley and elsewhere, and the shops typically are for wine collectors and/or carry

1   only expensive wines and do not sell the AU CONTRAIRE brand. Several of the shops in

2   question limit customers to "by appointment only," confirming that they cater to highly

3   sophisticated wine consumers.

4       The parties are unaware of a single instance of actual consumer confusion between the

5   parties' branded products despite the fact that the parties' wine products have allegedly co-

6   existed in the marketplace for the past five years.  Moreover, the U.S. Patent and Trademark

7   Office found no confusion between the parties' logo design marks when it approved Plaintiff's

8   U.S. Trademark Application for the Mouse and Elephant Design Mark despite the existence of

9   Palm Wine's Trademark Registration for the AU CONTRAIRE Design Mark on the Trademark

10  Registry.

11      Aside from the issue of likelihood of confusion, Defendants also maintain that Plaintiff

12  cannot establish the essential element of priority of superior and enforceable trademark rights as

13  against Defendants with respect to the Mouse and Elephant Design Mark to support Plaintiff's

14  claims for federal trademark infringement and unfair competition.  Palm Wine asserted

15  Counterclaims against Plaintiff seeking both a Declaration of Non-Infringement related to the

16  issue of priority of trademark rights as between the parties and Cancellation of Plaintiff's

17  Trademark Registrations and Applications.  The Court granted Plaintiff's motion to dismiss these

18  Counterclaims without prejudice and with leave to re-file on September 25, 2018. On October 9,

19  2018, Palm Wine filed a Second Amended Counterclaim seeking a declaration of non-

20  infringement based on Plaintiff's inability to establish that it has prior and superior enforceable

21  trademark rights in the Mouse and Elephant Design Mark depicted in U.S. Federal Trademark

22  Reg. No. 5,428,362 in interstate commerce as against Palm Wine's AU CONTRAIRE Design

23  Mark as depicted in U.S. Federal Trademark Reg. No. 4,757,065.

24      Assuming, *arguendo*, that Plaintiff ultimately can establish liability for any of its claims

25  at trial, Plaintiff's potential monetary recovery is limited due to a number of factors.

26      First, Plaintiff cannot prove willful trademark infringement because there was no

27  deliberate intent to deceive consumers on Defendants' part. Palm Bay discovered the existence

28  of Plaintiff's label design after the label for AU CONTRAIRE was already conceived. Palm Bay

**JOINT CASE MANAGEMENT**                    8                    CASE NO. 5:17-06609-LHK
**STATEMENT**

conducted an investigation of the marketplace and concluded that Plaintiff's TEETER-TOTTER product was not on sale, so it made the business decision to move forward with sales of AU CONTRAIRE wine on this good faith basis. There certainly is no suggestion that Palm Bay was seeking to trade on the purported rights of Plaintiff at the time it introduced AU CONTRAIRE in the market, nor can there be such a claim now, since Plaintiff's wine product is virtually non-existent in the California wine marketplace.

Second, the doctrine of apportionment will substantially limit any damage award because Plaintiff's sole claim of confusion relates only to artwork on the wine labels. Defendants intend to introduce fact and expert witness testimony that consumers purchase wine because of many factors other than the picture or drawing on the label, including price, varietal and brand name. The brands here, TEETER-TOTTER and AU CONTRAIRE, are not at issue in this case. Hence, any measure of damages, whether based on Defendants' profits or plaintiff's claim of damages, would have to be reduced substantially under the doctrine of apportionment because of the limited nature of the IP rights subject to the claim of confusion.

Third, Mr. Touquette conceded at his deposition that he has no evidence of losing a single sale of TEETER-TOTTER brand wines because of the existence of AU CONTRAIRE in the market. Nor could he, because TEETER-TOTTER has a production capacity of 3,500 cases of wine per year due to supply limitations, and Plaintiff sells out its production run each year. Hence, Plaintiff cannot make a claim for actual damages or lost profits under any trademark-based claim.

Finally, Plaintiff's damages claims will be limited for the copyright claims because Plaintiff cannot seek statutory damages or attorney's fees under the Copyright Act since the claimed acts of infringement occurred many years before Plaintiff registered the copyright in the label artwork.

**Legal Issues**

1)     Whether the production, marketing, and sale of Defendants' AU CONTRAIRE brand wine constitutes either direct or secondary (contributory or vicarious) trademark infringement;

2)    Whether Defendants' adoption of the Au Contraire Design Mark was with knowledge of Plaintiff's Teeter-Totter Design Mark, and whether Defendants committed willful infringement;

3)    Whether Plaintiff has suffered, or will suffer, damages or loss of goodwill as a result of Defendants' production, marketing, and sale of Defendants' AU CONTRAIRE brand wine;

4)    Whether Plaintiff is entitled to any monetary damages or injunctive relief with respect to Defendants' production, marketing, and sale of Defendants' AU CONTRAIRE brand wine;

5)    Whether the production, marketing, and sale of Defendants' AU CONTRAIRE brand wine constitutes federal unfair competition under 15 U.S.C. § 1125(a);

6)    Whether Defendants' use of the Au Contraire Design Mark constitutes either direct or secondary (contributory or vicarious) copyright infringement;

7)    Whether the production, marketing and sale of Defendants' AU CONTRAIRE brand wine violates California Business & Professions Code § 17200, *et seq.*;

8)    Whether Palm Wine Holdings' federal Trademark Registration No. 4,757,065 is void and should be canceled;

9)    Whether Palm Wine Holdings committed fraud or inequitable conduct before the USPTO in applying for federal Trademark Registration No. 4,757,065;

10)    Whether there is a likelihood of confusion among consumers over the parties' trademarks; and

11)    Whether Plaintiff has prior and superior enforceable trademark rights as against Defendants.

12)    Whether Plaintiff has valid ownership of U.S. Copyright Registration No. VA-00020906166.

**<u>Motions</u>**

On April 25, 2018, Plaintiff filed a Motion to Dismiss Defendants' Amended Counterclaims, which was granted by Order dated September 25, 2018. There are no currently

1   pending motions on file. However, Plaintiff may move for leave to amend its complaint, as set
2   forth below. Defendant will oppose any such motion. Plaintiff may also move for summary
3   judgment and/or summary adjudication of issues. Defendant may also move for summary
4   judgment on a partial or case-dispositive basis.  As set forth below ("Discovery"), a discovery
5   dispute over Defendants' claim of attorney-client privilege may precipitate a motion to compel.

6   **Amendment of Pleadings**

7   On July 13, 2018, Plaintiff filed a Consent Motion for leave to file an Amended
8   Complaint (Doc. No. 46) to include, inter alia, its issued copyright registration, which was
9   granted on July 17, 2018 (Doc No. 47). The Court entered Plaintiff's Amended Complaint on the
10  docket on July 18, 2018 (Doc. No. 48) and on the same date Plaintiff filed its accompanying
11  Exhibits (Doc. No. 49).

12  On October 9, 2018, Defendant Palm Wine filed a Second Amended Counterclaim with
13  leave of Court, consistent with the Court's September 25, 2018 Order on the Plaintiff's Motion
14  to Dismiss.

15  Based on newly discovered facts, Plaintiff may seek leave to amend its Complaint to add
16  additional parties, including Heritance Vintners, LLC and Popcorn Design, LLC. Plaintiff would
17  not add any additional causes of action. Defendants do not consent to a schedule that will allow
18  amending the pleadings through the discovery period and beyond. Defendants will oppose any
19  further amendment to the pleadings as Defendants maintain that complete relief can be afforded
20  to Plaintiff based on the parties in suit.

21  **Evidence Preservation**

22  Each of the parties has reviewed the Guidelines Relating to the Discovery of
23  Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f)
24  regarding reasonable and proportionate steps to preserve evidence relevant to the issues
25  reasonably evident in this action.

26  **Disclosures**

27  The parties have exchanged their Initial Disclosures in compliance with Federal Rule of
28  Civil Procedure 26 on or before March 21, 2018.  Plaintiff served Amended Disclosures on June

JOINT CASE MANAGEMENT                 11              CASE NO. 5:17-06609-LHK
STATEMENT

1   29, 2018.

2   **<u>Discovery</u>**

3   Both sides have propounded written discovery requests on other parties and deposition

4   subpoenas on non-parties in this action related to Plaintiff's claims for trademark and trade name

5   infringement, copyright infringement, unfair competition and unfair business practices, violation

6   of California Business & Professions Code, trademark cancellation, and inequitable conduct

7   before the USPTO and defendant Palm Wine Holding's counterclaim, to which responses and

8   objections were served. The parties are engaged in a rolling document production. Plaintiff and

9   its contracted bookkeeper have produced over 3,500 documents, while Defendants have

10  produced over 1,500 documents and Defendants' third party contractors have produced more

11  than 4,000 documents.  Plaintiff has initiated, but not yet completed, the depositions of (1)

12  Defendants' label designer Lisa Hobro, and (2) Defendants' winemaking consultant, Tom Hinde,

13  principal of Popcorn Design, LLC dba Prospect Brands. Defendants have taken the depositions

14  of (1) Plaintiff's principal, Benoit Touquette, as well as non-party witnesses (2) Boris Guillome

15  and (3) Shauna Mackenzie, and further testimony from these witness would only be anticipated

16  based on additional documents produced by Plaintiff and/or third-party witnesses. The parties are

17  cooperating in the further coordination of witness schedules and continue to conduct depositions

18  of both party and non-party witnesses, with parts 2 of Mr. Hinde's and Ms. Hobro's depositions

19  to be scheduled on mutually acceptable dates prior to the close of discovery, and the depositions

20  of Palm Bay personnel, including Marcy Whitman and Marc Taub, tentatively set to take place

21  in Port Washington, NY during the final week of February 2019. During Mr. Hinde's deposition

22  (and as confirmed in Ms. Hobro's deposition), new facts came to light. Based on those facts,

23  Plaintiff will seek to depose Jay Behmke, who was a member and manager of Popcorn Design,

24  LLC in 2014, and Julie Schreiber, who was a consulting winemaker for Popcorn Design, LLC in

25  2014. On January 29, 2019, Defendant caused to be served eight (8) third-party document and

26  deposition subpoenas from various sources.

27  Plaintiff's Position: While discovery is proceeding effectively, newly discovered facts

28  may necessitate additional discovery and amendment of Plaintiff's Complaint, and an

**JOINT CASE MANAGEMENT**          12          CASE NO. 5:17-06609-LHK
**STATEMENT**

1   appropriate further extension to the fact discovery cutoff, currently set for March 7, 2019.

2          Defendant's Position: At this juncture, Defendant does not anticipate needing to adjust

3   the Court's current schedule.

4          **Discovery dispute**

5          Plaintiff's Position: The parties are engaged in a dispute regarding Defendants' claim of

6   attorney-client privilege to a document Bates-marked PALM_000030. Defendants produced the

7   document in unredacted form and subsequently claimed it was inadvertently produced. A

8   substitute redacted version of the document was provided to Plaintiff. The document consists of

9   Plaintiff's Teeter-Totter label proof bearing Taub's hand-drawn "curlicue" tail on Plaintiff's

10  mouse image. Defendants contend that they have redacted notes made by Defendant Palm Bay's

11  Marketing Director, Marcy Whitman, in a meeting with Palm Bay's then-general counsel,

12  Michael O'Brien, which constitute or reflect his legal advice. The parties have agreed to defer

13  Plaintiff's challenge until the completion of further discovery, including the depositions of Palm

14  Bay personnel and Mr. O' Brien (who is no longer with Palm Bay). Defendants have not yet

15  produced a privilege log.

16         Defendant's Position: Defendants maintain that there is no dispute because this was a

17  classic case of inadvertent production and the handwritten notes on the document in question are

18  clearly covered by the attorney-client privilege.

19         The underlying document in question was the printing label that David Buse of Collotype

20  Labels sent to Lisa Hobro by email on March 5, 2014. Lisa Hobro then emailed the document to

21  her contact at Palm Bay, Marcy Whitman, Senior Vice President of Marketing for Palm Bay, on

22  March 6, 2014.  Upon receipt of the email from Ms. Hobro, Ms. Whitman shared the email and

23  document with Palm Bay's General Counsel, Michael O'Brien, that same day. Ms. Whitman and

24  Attorney O'Brien promptly had a meeting for the purpose of discussing the legal ramifications

25  of the discovery of the Teeter-Totter brand depicted in the Collotype Labels document. The

26  handwritten notes appearing on Palm__00030 are Ms. Whitman's handwritten notes made

27  during her meeting with Attorney O'Brien and reflect Mr. O'Brien's legal advice. The document

28  bearing Ms. Whitman's handwritten notes was kept in Palm Bay's files at all relevant times and

1  not shared with anyone outside of the company.  The document was inadvertently produced to

2  Plaintiff during discovery because Defendants' counsel failed to appreciate at the time of the

3  review that the notes were Ms. Whitman's and that they reflected legal advice provided by Palm

4  Bay's counsel. After viewing the document following its reference in the lawsuit, counsel

5  promptly inquired of Palm Bay about the source of the handwritten notes, and Palm Bay

6  confirmed that they were Ms. Whitman's handwritten notes and reflect her conversation with

7  Attorney O'Brien.  As such, this is a straightforward case of inadvertent disclosure in accordance

8  with Fed. R. Evid. 502, paragraph 11 of the parties' April 12, 2018 Stipulated Protective Order,

9  Federal common law and the laws of the States of California and New York governing

10  inadvertent disclosure.

11  **Discovery Topics**. The parties have propounded discovery relevant to the claims and

12  defenses presented in this action, including (without limitation) the following: the parties'

13  conception, adoption, design and use of their respective marks; the parties' labeling of the wines

14  bearing their respective marks; the labeling by authorized third parties of wines bearing the

15  parties' marks; the parties' advertising and marketing in connection with their respective marks;

16  the channels and extent of distribution of the wines bearing the parties' respective marks; the

17  types of consumers that purchase the wines bearing the parties' respective marks and to whom

18  the parties direct their respective advertising and marketing; other relevant likelihood-of-

19  confusion factors; relevant sales information and financial data; identities of persons in the

20  parties' respective businesses; trademark searches or other inquiries performed by or on behalf of

21  the parties; each party's first awareness of the other parties' respective mark(s); any instances or

22  evidence of confusion; the business relationships between each party and the third parties

23  involved in marketing, distribution and sale of their products, including the parties' authority and

24  control over, legal and financial relationships with, such third parties; relevant communications

25  with, of and between the parties and third parties; relevant communications with customers and

26  prospective customers; and the relationship between Plaintiff, Benoit Touquette and Boris

27  Guillome.

28  ///

**JOINT CASE MANAGEMENT**          14          CASE NO. 5:17-06609-LHK
**STATEMENT**

**Discovery Limitations**.

The parties have agreed upon the following limitations, subject to modification by stipulation: *Depositions*: 10 seven-hour depositions per side./ *Interrogatories:* 25 per side./ *Request for Admissions*: no limit, but reasonably tailored and proportionate to the issues relevant to this lawsuit; and *Document Requests*: no limit, but reasonably tailored and proportionate to the issues relevant to this lawsuit.

The parties have negotiated a Protective Order to protect the confidentiality of certain documents and information.  Privileged information that is inadvertently produced shall not be deemed a waiver of the attorney-client privilege, attorney work product protection, or any other recognized privilege or protection with respect to that information, and documents containing such information shall be returned immediately to the producing party in accordance with the Protective Order that shall be entered in this case.

**Class Actions.**

Not applicable.

**Related Cases.**

There are no related cases.

**Relief.**

Plaintiff seeks, among other relief requested in its Complaint, an injunction, damages, that damages be trebled, punitive damages, attorneys' fees, and cancellation of federal Trademark Registration No. 4,757,065. Plaintiff anticipates that damages may be calculated based on Defendants' profits.

Defendants and Counterclaimant seek a dismissal of Plaintiff's complaint and an award of their costs and attorney's fees.

**Settlement and ADR.**

The parties have engaged in brief settlement discussions. The parties have filed their ADR certifications pursuant to ADR L.R. 3-5(b). The parties have taken part in Court-supervised Mediation before Mediator Ian Feinberg on October 29, 2018.  Plaintiff prepared and transmitted a settlement proposal to Defendants on July 31, 2018. At Mr. Feinberg's request, Plaintiff

prepared a draft Settlement Agreement for further negotiation by the parties at the scheduled mediation session. The parties submitted their respective mediation statements to Mr. Feinberg on September 21, 2018.  Mediation took place and settlement was not reached. Plaintiff believes that a settlement conference with a judge may be beneficial since mediation was not productive. Defendant maintains that a further settlement conference would not be productive at this time because the parties remain too far apart in settlement demands.

**Consent to Magistrate Judge for All Purposes.**

The parties have not consented to have a magistrate judge conduct all proceedings in this case. Plaintiff filed its Consent or Declination to Magistrate Judge Jurisdiction, declining jurisdiction, on November 20, 2017 (ECF Doc. No. 3).

**Other References.**

The parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**Narrowing of Issues.**

The parties are open to the possibility of narrowing the issues.

**Expedited Schedule.**

Plaintiff raised the possibility of an expedited schedule with the Defendants. However, Defendants do not agree to an expedited schedule.

///

///

///

1

**Scheduling**.

2

3

| Scheduled Event | Date |
|---|---|
| Further Case Management Conference | February 6, 2019, at 2:00 p.m. |
| Close of Fact Discovery | March 7, 2019 |
| Opening Expert Reports | April 4, 2019 |
| Rebuttal Expert Reports | May 2, 2019 |
| Close of Expert Discovery | May 30, 2019 |
| Last Day - Motion for Class Certification | June 20, 2019 |
| Hearing on Dispositive Motions | August 15, 2019, 1:30 p.m. |
| Final Pretrial Conference | October 24, 2019, 1:30 p.m. |
| Jury Trial | November 12, 2019, 9:00 a.m. |
| Length of Trial | 5 days |

4

5

6

7

8

9

10

11

12

13

14

**Trial**.

15

Plaintiff has requested that the matter be tried to a jury and the parties estimate the length

16

of trial to be 5 days.

17

**Disclosure of Non-Party Interested Entities or Persons**.

18

All parties have filed the "Certification of Interested Entities or Persons" as required by

19

Civil Local Rule 3-16, identifying the following interested entities or persons:

20

Plaintiff: None.

21

Defendants: E & J Gallo Winery owns defendant J. Vineyards & Winery, LLC.

22

**Professional Conduct.**

23

All attorneys of record for the parties have reviewed the Guidelines for Professional

24

Conduct for the Northern District of California.

25

**Other Matters**.

26

None.

27

///

28

///

**JOINT CASE MANAGEMENT**
**STATEMENT**

CASE NO. 5:17-06609-LHK

1

2    Respectfully submitted,

3

4    Dated: January 30, 2019                    DICKENSON, PEATMAN & FOGARTY

5                                               By  /s/ Christopher J. Passarelli
                                                   Christopher J. Passarelli
6                                                  Joy L. Durand

7                                               Attorneys for Plaintiff,
8                                               Teeter-Totter, LLC

9

10   Dated: January 30, 2019                    FERDINAND IP, LLC

11                                              By  /s/ John F. Olsen
                                                   John F. Olsen
12                                                 Edmund J. Ferdinand, III

13                                              Attorneys for Defendants,
14                                              Palm Bay International, Inc.; Palm Wine Holdings,
                                                LLC; J Vineyards & Winery, LLC; RB Wine
15                                              Associates, LLC

16

17

18

19

20

21

22

23

24

25

26

27

28

**JOINT CASE MANAGEMENT**                18                CASE NO. 5:17-06609-LHK
**STATEMENT**