1  CHRISTOPHER J. PASSARELLI, SBN 241174
   ORY SANDEL, SBN 233204
2  JOY L. DURAND, SBN 245413
   DICKENSON, PEATMAN & FOGARTY
3  1455 First Street, Ste. 301
   Napa, California 94559
4  Telephone: (707) 252-7122

5  *Attorneys for Plaintiff, Teeter-Totter, LLC*

6  JOHN F. OLSEN, SBN 157465
   FERDINAND IP, LLC
7  800 West El Camino Real, Ste. 180
   Mountain View, CA 94040
8  Telephone: (858) 412-4515

9  EDMUND J. FERDINAND, III *(pro hac vice)*
   FERDINAND IP, LLC
10 450 Seventh Avenue, Suite 1300
   New York, New York 10123
11 Telephone: (212) 220-0523

12 *Attorneys for Defendants, Palm Bay International, Inc.;*
   *Palm Wine Holdings, LLC; J Vineyards & Winery, LLC;*
13 *RB Wine Associates, LLC*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TEETER-TOTTER, LLC, | CASE NO. 5:17-cv-06609-LHK |
| Plaintiff, | |
| vs. | **JOINT CASE MANAGEMENT STATEMENT** |
| PALM BAY INTERNATIONAL, INC., PALM WINE HOLDINGS, LLC, J VINEYARDS & WINERY LLC, RB WINE ASSOCIATES, LLC | |
| Defendants. | |
| PALM WINE HOLDINGS, LLC, | |
| Counterclaim Plaintiff, | |
| vs. | |
| TEETER-TOTTER, LLC, | |
| Counterclaim Defendant. | |

Pursuant to the Federal Rule of Civil Procedure 26(f), Civil Local Rule 16-9, and the Standing Order for All Judges of the Northern District of California, Plaintiff Teeter-Totter, LLC ("Plaintiff") and Defendants Palm Bay International, Inc. ("Palm Bay"), Palm Wine Holdings, LLC ("Palm Wine Holdings"), J Vineyards & Winery d/b/a Au Contraire ("Au Contraire"), and RB Wine Associates, LLC ("RB Wine") (collectively, "Defendants") hereby submit this Joint Case Management Statement.

**Jurisdiction and Service**

The parties agree that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1338(a) and pendent jurisdiction over all related claims in accordance with 28 U.S.C. § 1338(b). There are no existing issues regarding service, personal jurisdiction or venue, and no parties remain to be served at this time.

**Facts**

**Plaintiff's Statement**. Plaintiff is a wine company founded by Napa Valley winemaker Benoit Touquette, a native of France, who has enjoyed much critical success, including numerous wines receiving 100-point scores from world-renowned critics. As a result, his wine has earned millions of dollars in consumer sales revenue. As early as October 25, 2013, Plaintiff sold both red and white wine under the distinctive trademark and name, TEETER-TOTTER.

The Teeter-Totter wine label incorporates a drawing of a mouse and elephant on opposite ends of a teeter-totter, with the elephant suspended on the higher end (the "Teeter-Totter Design Mark"). Plaintiff owns federal TM Reg. No. 4,557,117 for TEETER-TOTTER (Word) in Class 33, filed on April 11, 2013 as an ITU. Plaintiff also owns CA TM Reg. No. 122,196 and federal TM Reg. No. 5,428,362, both for the Teeter-Totter Design Mark. On August 31, 2017, the U.S. Copyright Office issued Plaintiff's U.S. Copyright Registration No. VA-0002096166 for the image embodied in the Teeter-Totter Design Mark as a creative work of authorship pursuant to 17 U.S.C. § 408.

In late 2013, Defendants hired Popcorn Design, LLC dba Prospect Brands to develop and produce a new wine brand, bearing the French moniker "AU CONTRAIRE". Popcorn Design introduced Defendants to Lisa Hobro Design, a design firm specializing in the creation of wine

labels. Lisa Hobro Design created a label bearing a bird and elephant on opposite ends of a teeter-totter, with the elephant suspended on the higher end (a configuration strikingly similar to the Teeter-Totter Design Mark), and provided the label to Defendants in late December, 2013. In early January, 2014, Marc Taub, principal of Defendant Palm Bay International, Inc. instructed Defendants' design team to *change the bird to a **mouse***, thus more closely approximating Plaintiff's Teeter-Totter Design Mark. Lisa Hobro Design made the change requested; the "final" design, approved by Defendants in late January of 2014, had the mouse's tail hanging off the end of the teeter-totter. In mid- to late-February of 2014, the label design with a mouse and elephant on opposite ends of a teeter-totter was submitted to the U.S. Dept. of Treasury, Alcohol and Tobacco Tax and Trade Bureau ("TTB"), in an application for a Certificate of Label Approval ("COLA"), which is required for alcoholic beverages. The same label design was also submitted to the label printer, Collotype Labels, in or about late February or early March of 2014 for a label print run for the Au Contraire wines to be bottled at the end of March.

On March 5, 2014, at approximately 4:14 pm PST, Lisa Hobro received an email from Collotype with Plaintiff's label proof bearing the Teeter-Totter Design Mark, and promptly notified Defendants and Popcorn Design, LLC. Jay Behmke, then a member and manager of Popcorn Design, LLC, and a California lawyer, conducted a minimal investigation of Teeter-Totter, in which he discovered Plaintiff's pending "TEETER-TOTTER" standard character mark federal trademark application and its approved TTB COLA bearing the Teeter-Totter Design Mark. Defendants were provided the results of Mr. Behmke's investigation, which consisted, in its entirety, of four hyperlinks. Without apparent further inquiry or investigation, much less sufficient due diligence, Defendants filed with the USPTO their trademark application, Ser. No. 86/213,179, for the Au Contraire Design, at 11:59 am PST *the very next day,* March 6, 2014 – that is, less than 18 hours after Lisa Hobro Design had received Plaintiff's label proof.

Although Defendants' "final" label had already been submitted to Collotype for printing, Mr. Taub subsequently **drew a curlicue tail on top of the tail in Plaintiff's label proof** and instructed that this **additional design change** be made to Defendants' mouse.  This change also caused the Au Contraire label to more closely approximate Plaintiff's Teeter-Totter Design.

Due to the timing of these events, the final Au Contraire Design Mark used in commerce is quite different from both: (1) the mark drawing in Registration No. 4,757,065 and (2) the mark drawing in the COLAs obtained by J Vineyards and Winery for Au Contraire. The figure below is a side-by-side comparison (from left-to-right) of: (1) Plaintiff's Teeter Totter Design Mark (Reg. No. 5,428,362); (2) Defendants' prior Au Contraire Design (Reg. No. 4,757,065 for which a nonconforming specimen was submitted) also subject of the first Au Contraire COLA filed by Defendants; and (3) Defendants' "final" Au Contraire Design Mark (with modified mouse) as actually used in commerce.

**Fig. 1.** Teeter-Totter Design / Registered Au Contraire Design / Actual Au Contraire Design

Defendants subsequently began marketing and selling wine under the AU CONTRAIRE brand. In its trademark application, Defendant Palm Wine Holdings, LLC claimed first use of the earlier Au Contraire design (which may never have been used in commerce) as of April 24, 2014. Palm Wine Holdings, LLC obtained federal Trademark Registration No. 4,757,065 for such design on June 16, 2015.

Plaintiff alleges that the Au Contraire Design Mark is confusingly similar to the Teeter-Totter Design Mark, that Defendants copied the Teeter-Totter Design Mark despite having knowledge of Plaintiff's trademarks and copyright, and that Defendants intentionally misled the U.S. Patent and Trademark Office ("USPTO") in order to obtain Registration No. 4,757,065.

**<u>Defendants' Statement</u>.** Plaintiff commenced this action in November, 2017, with no prior notice to Defendants, by filing a twelve-count Complaint for trademark infringement, copyright infringement and related claims under federal and state law. The crux of Plaintiff's Complaint, as amended, alleges that artwork on the label of Defendants' AU CONTRAIRE brand wine product infringes upon intellectual property rights in artwork on the label of Plaintiff's

1  TEETER-TOTTER brand wine. To succeed on its federal Lanham Act claims, Plaintiff must
2  establish that it has priority of enforceable trademark rights as against Defendants, likelihood of
3  confusion under the governing *Sleekcraft* factors and damages. Defendants vigorously contest
4  these elements and maintain that they have meritorious defenses to all of Plaintiff's claims as a
5  matter of law.

6  In 2013, Defendant Palm Bay, a leading wine importer, decided to enter the California
7  wine market through a newly formed entity, Heritance Vintners, LLC, and using the designation
8  "Taub Family Vineyards" for marketing purposes. Heritance Vineyards formed key relationships
9  necessary to establish the new California wine business, including retaining a renowned
10 winemaker to oversee wine production and supply; retaining a prominent vineyard to produce
11 wine; and retaining a prominent graphic designer to create wine labels.

12 The brand AU CONTRAIRE was conceived by Palm Bay for the first of the new California
13 product lines as an homage to David Taub, Palm Bay's founder and former longtime president,
14 who often used the phrase for insights that were contrary to conventional wisdom.  When Palm
15 Bay's President, Marc Taub, met with a graphic designer, Lisa Hobro, on September 23, 2013 to
16 discuss label concepts and names, Mr. Taub indicated that "AU CONTRAIRE" would be the name
17 of one of the new California wines.  On November 18, 2013, Defendant, Palm Wine, a related
18 entity to Palm Bay, filed U.S. Trademark Application Serial No. 86/122,006 for the mark AU
19 CONTRAIRE for use in connection with wines on an intent to use basis, which later matured into
20 U.S. Federal Trademark Reg. No. 4,689,725.

21 Beginning in the fall of 2013, Palm Bay, d/b/a as Heritance, proceeded to take all necessary
22 steps for the launch of AU CONTRAIRE brand wine, including arranging for production of the
23 wine, the creation of the wine label and securing all necessary permits and regulatory approvals.
24 Lisa Hobro began working with Palm Bay to create a new label design for the AU CONTRAIRE
25 product line. Ms. Hobro and her team worked for several months to create original artwork for the
26 new AU CONTRAIRE label, completely unaware of the existence of artwork for the TEETER-
27 TOTTER wine label. Palm Bay approved the label artwork on March 5, 2014, and that same day
28 Ms. Hobro sent the label to a local printing company, Collotype Labels. Within hours, Ms. Hobro

received an email back from David Buse of Collotype, attaching a copy of a work order that Collotype had done 6 months prior for Mr. Touquette's TEETER-TOTTER brand. Ms. Hobro immediately sent Mr. Buse's email to Palm Bay.

On March 6, 2014, Palm Wine's representatives conducted an investigation of the U.S wine market and could not locate any sales of wine products featuring the TEETER-TOTTER label depicted in the TTB COLA application filed by Hartwell Vineyards on October 30 2013. Based upon this investigation, Palm Bay concluded that TEETER-TOTTER wines were not on sale in the U.S. market and it made the business decision, in good faith, to move forward with its AU CONTRAIRE brand using the label that Ms. Hobro had sent to Collotype, with additional slight modifications. That same day, on March 6, 2014, Palm Wine filed U.S. Trademark Application Serial No. 86/213,197 for the AU CONTRAIRE Logo Design mark, which later matured into U.S. Federal Trademark Reg. No. 4,757,065.

Palm Bay, acting though Heritance Vintners, commenced sales of AU CONTRAIRE wines in the United States on April 24, 2014.

The similarity of the marks is in dispute. First, while Plaintiff has asserted its federally-registered TEETER-TOTTER word mark to support its claims of trademark infringement and unfair competition, there can be no serious question of infringement between this word mark and Palm Wine's AU CONTRAIRE Logo Design mark. Defendants expect to file a summary judgment motion seeking dismissal as a matter of law for any claim related to infringement of Plaintiff's TEETER-TOTTER word mark.

With respect to a comparison of the TEETER-TOTTER Logo Design mark and Palm Wine's AU CONTRAIRE Logo Design mark, a detailed description of the differences in the two designs is set forth below, and these differences are relevant to both Plaintiff's trademark and copyright claims. With respect to the issue of substantial similarity, a comparison of the two works makes clear that there is no substantial similarity of protectable expression, foreclosing a finding of copyright infringement under the Ninth Circuit's extrinsic/intrinsic test. Plaintiff's copyright in its design does not protect against others reproducing the *idea* of depicting a see-saw with an elephant elevated on one side and a mouse on the ground on the other side (an idea that has been

expressed by others well before the creation of the parties' wine labels), but rather only the original expression of that idea as embodied in its drawing. Comparing the *expressions* of this idea as depicted in the two drawings, there is no substantial similarity between their *expressive elements*. Obvious differences in expression include (but not limited to):

- The mouse in Palm Bay's drawing is much smaller than the mouse in Teeter-Totter's drawing.
- The size of the mouse is larger in proportion to the size of the elephant in the Teeter-Totter drawing than the Palm Bay drawing, in which the elephant is significantly larger than the mouse.
- The mouse appears to be standing upright in the Teeter-Totter drawing, but not in the Palm drawing.
- The mouse in the Teeter-Totter drawing has a pointy nose and rounded ear; the mouse in the Palm drawing does not.
- The elephant in Palm's drawing is broader than the mouse in Teeter-Totter's drawing (approx. double the width).
- The curve of the elephant's trunk in each drawing is different (more "J"-shaped in the Palm Bay drawing; more "U"-shaped in the Teeter-Totter drawing).
- The mouse's tail in the Teeter-Totter drawing is "S"-shaped and pointing up and back; the mouse's tail in the Palm Bay drawing is "e"-shaped/curcilue, pointing in.
- The elephant in Palm's drawing shows four well-defined legs, a well-defined ear, and two tusks; the elephant in Teeter-Totter's drawing shows two "basic" legs, only a white line indicating an ear, and no tusk.
- The mouse and elephant (particularly the elephant) in Palm Bay's drawing are 3-dimensional life-like renderings with well-defined shading; the mouse and elephant in Teeter-Totter's drawing are 2-dimensional, cartoon-like pencil renderings
- The see-saw base in Teeter-Totter's drawing is a rock-like shape with a straight line underneath; the see-saw base in Palm Bay's drawing is a three-dimensional polygon shape (a box with a triangular top).
- The main see-saw board in Palm Bay's drawing is a three-dimensional rectangular shape; the main see-saw board in Teeter-Totter's drawing is simply a straight line.
- Shading appears beneath the see-saw in Palm Bay's drawing, but not Teeter-Totter's drawing.

The proximity of the parties' goods and sales and marketing channels are also in dispute. There are vast differences between the types of wine marketed under the parties' TEETER-TOTTER and AU CONTRAIRE brand names in terms of, *inter alia*, distribution channels, price, varietal and consumer appeal. AU CONTRAIRE brands are produced in Sonoma, California and are sold at popular price points. The www.wine-searcher.com site lists AU CONTRAIRE Pinot Noir at $ 9.99/bottle and Chardonnay for $15/bottle. In sharp contrast, TEETER-TOTTER wines, produced in Napa, are expensive wines sold to sophisticated wine purchasers mostly through Mr.

Touquette's private mailing list. Mr. Touquette has an MSRP for his Napa Valley Cabernet Sauvignon at $65/bottle, and he routinely calls any retailer that offers his wine below the suggested MSRP (although the product is available on www.wine-searcher.com for $55/bottle). Plaintiff's TEETER-TOTTER wines are available at a small number of wine shops in Napa Valley and elsewhere, and the shops typically are for wine collectors and/or carry only expensive wines and do not sell the AU CONTRAIRE brand. Several of the shops in question limit customers to "by appointment only," confirming that they cater to highly sophisticated wine consumers. Defendants retained a leading wine industry consultant, Christopher Lynch, who opined that due to the differences in the parties' products with respect to varietals, geography, price and distribution channels, among other issues, there was no proximity between the parties' products in the marketplace.

The parties are unaware of a single instance of actual consumer confusion between the parties' branded products despite the fact that the parties' wine products have allegedly co-existed in the marketplace for the past five years. Moreover, the U.S. Patent and Trademark Office found no confusion between the parties' logo design marks when it approved Plaintiff's U.S. Trademark Application for the Mouse and Elephant Design Mark despite the existence of Palm Wine's Trademark Registration for the AU CONTRAIRE Design Mark on the Trademark Registry. Finally, Defendants commissioned a consumer confusion survey from one of the country's leading survey experts, Dr. Isabella Cunningham of the University of Texas. Dr. Cunningham's survey revealed that when 421 respondents in the test group were shown a bottle of Defendants' AU CONTRAIRE brand wine, not a single person mentioned Plaintiff, its TEETER-TOTTER brand or Plaintiff's owner, Benoit Touquette. There is simply no evidence of consumer confusion in this case, either actual or likely.

Aside from the issue of likelihood of confusion, Defendants also maintain that Plaintiff cannot establish the essential element of priority of superior and enforceable trademark rights as against Defendants with respect to the Mouse and Elephant Design Mark to support Plaintiff's claims for federal trademark infringement and unfair competition. Palm Wine asserted Counterclaims against Plaintiff seeking both a Declaration of Non-Infringement related to the issue

of priority of trademark rights as between the parties and Cancellation of Plaintiff's Trademark Registrations and Applications. The Court granted Plaintiff's motion to dismiss these Counterclaims without prejudice and with leave to re-file on September 25, 2018. On October 9, 2018, Palm Wine filed a Second Amended Counterclaim seeking a declaration of non-infringement based on Plaintiff's inability to establish that it has prior and superior enforceable trademark rights in the Mouse and Elephant Design Mark depicted in U.S. Federal Trademark Reg. No. 5,428,362 <u>in interstate commerce</u> as against Palm Wine's AU CONTRAIRE Design Mark as depicted in U.S. Federal Trademark Reg. No. 4,757,065.

Assuming, *arguendo*, that Plaintiff ultimately can establish liability for any of its claims at trial, Plaintiff's potential monetary recovery is limited due to a number of factors.

First, Plaintiff cannot prove willful trademark infringement because there was no deliberate intent to deceive consumers on Defendants' part. Palm Bay discovered the existence of Plaintiff's label design after the label for AU CONTRAIRE was already conceived. Palm Bay conducted an investigation of the marketplace and concluded that Plaintiff's TEETER-TOTTER product was not on sale, so it made the business decision to move forward with sales of AU CONTRAIRE wine on this good faith basis. There certainly is no suggestion that Palm Bay was seeking to trade on the purported rights of Plaintiff at the time it introduced AU CONTRAIRE in the market, nor can there be such a claim now, since Plaintiff's wine product is virtually non-existent in the California wine marketplace.

Second, the doctrine of apportionment will substantially limit any damage award because Plaintiff's sole claim of confusion relates only to artwork on the wine labels. Defendants intend to introduce fact and expert witness testimony that consumers purchase wine because of many factors other than the picture or drawing on the label, including price, varietal and brand name. The brands here, TEETER-TOTTER and AU CONTRAIRE, are not at issue in this case. Hence, any measure of damages, whether based on Defendants' profits or plaintiff's claim of damages, would have to be reduced substantially under the doctrine of apportionment because of the limited nature of the IP rights subject to the claim of confusion.

Third, Mr. Touquette conceded at his deposition that he has no evidence of losing a single sale of TEETER-TOTTER brand wines because of the existence of AU CONTRAIRE in the market. Nor could he, because TEETER-TOTTER has a production capacity of 3,500 cases of wine per year due to supply limitations, and Plaintiff sells out its production run each year. Hence, Plaintiff cannot make a claim for actual damages or lost profits under any trademark-based claim. Defendants presented an expert report on damages showing that the total damages available to Plaintiff in this case in the event Plaintiff prevails at trial on issues of liability would be less than $20,000 USD total.  Plaintiff did not offer an expert report on damages.

Finally, Plaintiff's damages claims will be limited for the copyright claims because Plaintiff cannot seek statutory damages or attorney's fees under the Copyright Act since the claimed acts of infringement occurred many years before Plaintiff registered the copyright in the label artwork.

**Legal Issues**

1)	Whether the production, marketing, and sale of Defendants' AU CONTRAIRE brand wine constitutes either direct or secondary (contributory or vicarious) trademark infringement;

2)	Whether Defendants' adoption of the Au Contraire Design Mark was with knowledge of Plaintiff's Teeter-Totter Design Mark, and whether Defendants committed willful infringement;

3)	Whether Plaintiff has suffered, or will suffer, damages or loss of goodwill as a result of Defendants' production, marketing, and sale of Defendants' AU CONTRAIRE brand wine;

4)	Whether Plaintiff is entitled to any monetary damages or injunctive relief with respect to Defendants' production, marketing, and sale of Defendants' AU CONTRAIRE brand wine;

5)	Whether the production, marketing, and sale of Defendants' AU CONTRAIRE brand wine constitutes federal unfair competition under 15 U.S.C. § 1125(a);

6)	Whether Defendants' use of the Au Contraire Design Mark constitutes either direct or secondary (contributory or vicarious) copyright infringement;

7) Whether the production, marketing and sale of Defendants' AU CONTRAIRE brand wine violates California Business & Professions Code § 17200, *et seq.*;

8) Whether Palm Wine Holdings' federal Trademark Registration No. 4,757,065 is void and should be canceled;

9) Whether Palm Wine Holdings committed fraud or inequitable conduct before the USPTO in applying for federal Trademark Registration No. 4,757,065;

10) Whether there is a likelihood of confusion among consumers over the parties' trademarks; and

11) Whether Plaintiff has prior and superior enforceable trademark rights as against Defendants.

12) Whether Plaintiff has valid ownership of U.S. Copyright Registration No. VA-00020906166.

**Motions**

There are no currently pending motions on file. However, Plaintiff may move for summary judgment and/or summary adjudication of issues. Defendant may also move for summary judgment on a partial or case-dispositive basis. Defendant also intends to file a motion to strike Plaintiff's expert witness, Paul W. Riedl, Esq., from testifying at trial because Attorney Riedl seeks to offer testimony on a legal issue and offer the Court his interpretation of the applicable law and such testimony is not properly within the subject matter of an expert witness. Attorney Riedl's testimony seeks to usurp the function of the Court and the jury and his testimony should be precluded.

Plaintiff has proposed seeking a stipulated thirty-day continuance of upcoming dates pending a personal settlement meeting between the parties' respective principals. Defendant is amenable to Plaintiff's request, but has reserved all rights subject to review of Plaintiff's proposal and its impact on the Court's Scheduling Order.

**Amendment of Pleadings**

On July 13, 2018, Plaintiff filed a Consent Motion for leave to file an Amended Complaint (Doc. No. 46) to include, inter alia, its issued copyright registration, which was granted on July

17, 2018 (Doc No. 47). The Court entered Plaintiff's Amended Complaint on the docket on July 18, 2018 (Doc. No. 48) and on the same date Plaintiff filed its accompanying Exhibits (Doc. No. 49).

On October 9, 2018, Defendant Palm Wine filed a Second Amended Counterclaim with leave of Court, consistent with the Court's September 25, 2018 Order on the Plaintiff's Motion to Dismiss.

**Evidence Preservation**

Each of the parties has reviewed the Guidelines Relating to the Discovery of Electronically Stored Information and have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps to preserve evidence relevant to the issues reasonably evident in this action.

**Disclosures**

The parties have exchanged their Initial Disclosures in compliance with Federal Rule of Civil Procedure 26 on or before March 21, 2018. Plaintiff served Amended Disclosures on June 29, 2018.

//

**Discovery**

Fact discovery closed on March 7, 2019. Before that date, both sides propounded and responded to written discovery requests relevant to the claims and defenses presented in this action, and took the depositions of parties, party affiliates and non-parties.

The parties engaged in a rolling document production, including, by stipulation, after the close of fact discovery.

The parties also exchanged disclosures of expert witnesses as well as those witnesses' reports. No expert witnesses have yet been deposed.

**Discovery disputes**

<u>Depositions of Marcy Whitman and Person(s) Most Knowledgeable</u>

Plaintiff's Position: Plaintiff has initiated, but not yet completed, the depositions of (1) Palm Bay's and Palm Wine Holdings' person(s) most knowledgeable, and (2) Marcy Whitman,

Palm Bay's Senior Vice President, Marketing, all of whom are located in New York.[1] Plaintiff contends that Defendants' counsel stipulated and agreed to completion of those depositions after the close of fact discovery, including on the record. The continued depositions were in fact scheduled to take place by videoconferencing on March 22, 2019; however, due to the failure of Palm Bay's IT person to timely respond to the IT person for Plaintiff's counsel (which was needed to arrange for the necessary videoconferencing), and the court reporter's requirement of at least 24 hours' notice for cancellation without charge, those depositions were requested to be rescheduled at approximately 5:00 p.m. on March 20, 2019. Defendants' counsel refused to agree to reschedule the depositions and have since contended that the depositions had been "canceled". Notwithstanding Defendants' failure and refusal to cooperate in this regard, as noted above, Plaintiff has continued to produce documents after the discovery cut-off.

Defendants' Position: Defendants' maintain that Plaintiff waived its right to the continued depositions by unilaterally canceling them without a good faith basis. Ms. Whitman had already been deposed on February 26, 2019 for five (5) hours. Nevertheless, at Plaintiff's request, Palm Bay made her available for deposition again on March 22, 2019. In addition, Defendants made every effort to comply with Plaintiff's PMK deposition notice, which sought a total of 49 different topics, many of which were objectionable. To that end, Palm Bay designated two witnesses, its Chief Financial Officer and Marketing Officer, who were deposed on February 28, 2019. Palm Bay agreed to designate an additional witness, Giacomo Turone, a Senior Vice President, to testify on March 22, 2019.

After close of business on March 20, 2019, Plaintiff cancelled the depositions of Ms. Whitman and Mr. Turone, claiming that they were unable to confirm the technical details of the video depositions. In response, Palm Bay's IT staff member confirmed to Plaintiff's counsel on

---

[1] Two of Plaintiff's attorneys flew from California to New York to take those depositions, and the depositions of other of Defendants' witnesses, at the end of February, 2019, and agreed to continue said depositions for the convenience of Defendants' witnesses, based on stipulation of counsel that they would be made available in the future to complete said depositions.

JOINT CASE MANAGEMENT STATEMENT                13                CASE NO. 5:17-06609-LHK

Thursday morning, March 21, 2019, that all of the technical details were in order. As such, Defendants' counsel urged Plaintiff's counsel to proceed with the depositions as scheduled on March 22, but they refused. Defendants maintain that Plaintiff's actions to cancel the depositions were not in good faith.

<u>Attorney-Client Privilege and PALM_000030</u>

Plaintiff's Position: Defendants' have asserted the attorney-client privilege with regard to a document Bates-marked PALM_000030. Defendants produced the document in unredacted form and subsequently clawed it back, claiming it was inadvertently produced. A substitute redacted version of the document was provided to Plaintiff. The document consists of Plaintiff's Teeter-Totter label proof bearing a hand-drawn "curlicue" tail on Plaintiff's mouse image. Defendants contend that they have redacted notes made by Defendant Palm Bay's Marketing Director, Marcy Whitman, in a meeting with Palm Bay's then-general counsel, Michael O'Brien, which constitute or reflect his legal advice. In deposition, Mr. O'Brien testified that he had never provided legal advice in connection with the document. Defendants' counsel later attempted to rehabilitate the witness by reading to Mr. O'Brien Palm Bay's responses to certain of Plaintiff's interrogatories and having Mr. O'Brien simply state whether the statements made in those responses were accurate.

Plaintiff will move *in limine* for exclusion of or limitation on Defendants' evidence and testimony relating to both PALM_000030 and the depositions of Marcy Whitman and Palm Bay's and Palm Wine Holding's person(s) most knowledgeable.

Defendant's Position: Defendants maintain that there is no dispute because this was a classic case of inadvertent production and the handwritten notes on the document in question are clearly covered by the attorney-client privilege.

The underlying document in question was the printing label that David Buse of Collotype Labels sent to Lisa Hobro by email on March 5, 2014. Lisa Hobro then emailed the document to her contact at Palm Bay, Marcy Whitman, Senior Vice President of Marketing for Palm Bay, on March 6, 2014. Upon receipt of the email from Ms. Hobro, Ms. Whitman shared the email and

| JOINT CASE MANAGEMENT STATEMENT | 14 | CASE NO. 5:17-06609-LHK |

document with Palm Bay's General Counsel, Michael O'Brien, that same day. Ms. Whitman and Attorney O'Brien promptly had a meeting for the purpose of discussing the legal ramifications of the discovery of the Teeter-Totter brand depicted in the Collotype Labels document. The handwritten notes appearing on Palm__00030 are Ms. Whitman's handwritten notes made during her meeting with Attorney O'Brien and reflect Mr. O'Brien's legal advice. The document bearing Ms. Whitman's handwritten notes was kept in Palm Bay's files at all relevant times and not shared with anyone outside of the company. The document was inadvertently produced to Plaintiff during discovery because Defendants' counsel failed to appreciate at the time of the review that the notes were Ms. Whitman's and that they reflected legal advice provided by Palm Bay's counsel. After viewing the document following its reference in the lawsuit, counsel promptly inquired of Palm Bay about the source of the handwritten notes, and Palm Bay confirmed that they were Ms. Whitman's handwritten notes and reflect her conversation with Attorney O'Brien. Contrary to Plaintiff's assertions, Attorney O'Brien confirmed the accuracy of the statements above at his deposition on March 1, 2019.

As such, this is a straightforward case of inadvertent disclosure in accordance with Fed. R. Evid. 502, paragraph 11 of the parties' April 12, 2018 Stipulated Protective Order, Federal common law and the laws of the States of California and New York governing inadvertent disclosure.

**Protective Order Issue**

The parties negotiated a Stipulated Protective Order to protect the confidentiality of certain documents and information. On April 12, 2018, Magistrate Judge Howard Lloyd entered a modified version of the Stipulated Protective Order. As entered, the Stipulated Protective Order provides that parties are to comply with "the undersigned's Standing Order Re: Civil Discovery Disputes". However, Judge Lloyd has since retired, and neither his judicial profile nor his Standing Order Re: Civil Discovery Disputes is currently available (or, it would seem, applicable). Magistrate Judge Virginia DeMarchi is the new magistrate for this case. Plaintiff's counsel was informed by Judge DeMarchi's clerk that, to obtain a modification of the existing Stipulated Protective Order, a motion would be necessary.

**Class Actions.**

Not applicable.

**Related Cases.**

There are no related cases.

**Relief.**

Plaintiff seeks, among other relief requested in its Complaint, an injunction, money damages, the trebling of such damages pursuant to statute, punitive damages for Defendants' willful infringement, an award of its reasonable attorneys' fees, and cancellation of Defendants' federal Trademark Registration No. 4,757,065. Plaintiff will seek money damages in the form of disgorgement of Defendants' profits from the Au Contraire brand wines using the infringing mark.

Defendants and Counterclaimant seek a dismissal of Plaintiff's complaint and an award of their costs and attorney's fees.

**Settlement and ADR.**

The parties have engaged in brief settlement discussions. The parties have filed their ADR certifications pursuant to ADR L.R. 3-5(b). The parties have taken part in Court-supervised Mediation before Mediator Ian Feinberg on October 29, 2018.  Plaintiff prepared and transmitted a settlement proposal to Defendants on July 31, 2018. At Mr. Feinberg's request, Plaintiff prepared a draft Settlement Agreement for further negotiation by the parties at the scheduled mediation session. The parties submitted their respective mediation statements to Mr. Feinberg on September 21, 2018.  Mediation took place, but no settlement was reached. Plaintiff believes that a settlement conference with a judge may be beneficial since mediation was not productive. Defendant maintains that a further settlement conference would not be productive at this time because the parties remain too far apart in settlement demands. However, the principals of Plaintiff and Palm Bay have agreed in principle to an in-person meeting to discuss possible resolution of this action; that meeting has not yet been scheduled but is anticipated to occur within the next thirty days.

**Consent to Magistrate Judge for All Purposes.**

The parties have not consented to have a magistrate judge conduct all proceedings in this case. Plaintiff filed its Consent or Declination to Magistrate Judge Jurisdiction, declining

jurisdiction, on November 20, 2017 (ECF Doc. No. 3).

**Other References.**

The parties do not believe that the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.

**Narrowing of Issues.**

The parties are open to the possibility of narrowing the issues.

**Expedited Schedule.**

The parties have not agreed to an expedited schedule.

**Scheduling.**

The Court has set the following schedule in this matter:

| Scheduled Event | Date |
| --- | --- |
| Further Case Management Conference | May 1, 2019, at 2:00 p.m. |
| Close of Fact Discovery | March 7, 2019 |
| Opening Expert Reports | April 4, 2019 |
| Rebuttal Expert Reports | May 2, 2019 |
| Close of Expert Discovery | May 30, 2019 |
| Last Day - File Dispositive Motions | June 20, 2019 |
| Hearing on Dispositive Motions | August 15, 2019, 1:30 p.m. |
| Final Pretrial Conference | October 24, 2019, 1:30 p.m. |
| Jury Trial | November 12, 2019, 9:00 a.m. |
| Length of Trial | 5 days |

**Trial.**

Plaintiff has requested that the matter be tried to a jury and the parties estimate the length of trial to be 5 days.

**Disclosure of Non-Party Interested Entities or Persons.**

All parties have filed the "Certification of Interested Entities or Persons" as required by Civil Local Rule 3-16, identifying the following interested entities or persons:

<u>Plaintiff</u>: None.

Defendants: E & J Gallo Winery owns defendant J. Vineyards & Winery, LLC.

**Professional Conduct.**

All attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**Other Matters.**

None.

Respectfully submitted,

Dated: April 23, 2019

DICKENSON, PEATMAN & FOGARTY

By _____
Christopher J. Passarelli
Ory Sandel
Joy L. Durand

Attorneys for Plaintiff,
Teeter-Totter, LLC

Dated: April 23, 2019

FERDINAND IP, LLC

By _Edmund J. Ferdinand, III_
John F. Olsen
Edmund J. Ferdinand, III

Attorneys for Defendants,
Palm Bay International, Inc.; Palm Wine Holdings, LLC; J Vineyards & Winery, LLC; RB Wine Associates, LLC